JB

23cv4493
Judge Seeger
Magistrate Judge Jantz
Randomly Assigned Cat 2

# FILED

JUL 1 2 2023  JB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GRACE SHOPHAR | ) | |
| RAPHAH SHOPHAR | ) | In support of: |
| SASUAH SHOPHAR | ) | |
| JOREL SHOPHAR | ) | |
| | ) | First Amendment |
| *Plaintiffs,* | ) | Declaratory Decree |
| | ) | |
| v | ) | 42 U.S.C. § 1983 |
| | ) | 28 U.S.C. § 1331 |
| KATHLEEN SLOAN | ) | 28 U.S.C. § 1332 |
| NATHAN WILKIE | ) | 28 U.S.C. § 1738 |
| TEENA WILKIE | ) | 28 U.S.C. § 1391 |
| DERK HANNA | ) | PKPA Act |
| REGINA HANNA | ) | |
| JUSTIN DANNER | ) | |
| ANNIE DANNER | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| *Defendants,* | ) | |

## COMPLAINT

Grace Shophar (hereafter, "Grace"), Raphah Shophar (hereafter, "Raphah"), Sasuah Shophar (hereafter, "Sasuah"), and Jorel Shophar (hereafter "Jorel" and "Shophar") complains against the Defendants as follows:

**1.** This is an action by the Plaintiffs, for defamation, intentional infliction of emotional distress, violation of constitutional rights, deprivations, injury, emotional distress, and prayer for declaratory judgment, and Federal Question of **two State orders under UCCJEA and 28 U.S.C. § 1738A.**

2. Grace Shophar, Raphah Shophar, Sasuah Shophar and Jorel Shophar are citizens of the State of Illinois and residents of Cook County, Illinois.

1

i.  **Exhibits**

    A. Honorable Judge Boyd Order of Illinois Jurisdiction June 1, 2023

    B. Respondent Sloan Released of Jurisdiction February 4, 2022

    C. Respondent Sloan Deficient order of June 13, 2023 – Grace

    D. Respondent Sloan Deficient order of June 13, 2023 – Raphah

    E. Respondent Sloan Deficient order of June 13, 2023 – Sasuah

    F. Respondent Sloan Deficient order of June 13, 2023 – Shophar

    G. Respondent Sloan Deficient order of June 16, 2023

    H. U.S. Judge Crabtree Order of denial of early release

3. *Flood v. Braaten, 727 F. 2d 303 – Court of Appeals, 3rd Circuit 1984"We are persuaded that in limited circumstances of noncompliance with § 1738A, federal district court intervention is permissible. In § 1738A, Congress unequivocally and mandatorily imposed federal duties on the states — "The appropriate authorities of every state shall enforce...." The general grant of subject matter jurisdiction, 28 U.S.C. § 1331 (Supp. V 1981), permits federal district courts to hear claims that federal rights have been infringed. Altogether denying parents a district court forum for lawsuits claiming violation of rights under § 1738A would come close to a judicial repeal of those statutory rights. "To take away all remedy for the enforcement of a right is to take away the right itself." Poindexter v. Greenhow, 114 U.S. 270, 303, 5 S.Ct. 903, 921, 29 L.Ed. 185 (1885).*

4. Plaintiff Shophar has statutory right to assume legal and physical custody of his minors and Plaintiff Grace and Raphah have a statutory right to have *familial relationships with their siblings,* as a matter of civil right, and Law.

5.      A UCCJEA order was Decreed by the State of Illinois and affirmed Shophar's right to his sons on **June 1, 2023** by Honorable Judge Boyd – View Exhibit A. Defendant Kathleen Sloan (hereafter "Sloan") infringed upon this right on **June 16, 2023 (15 days later),** by contriving a deficient, and invalid (View Exhibit G) order under CINC provisions and not the UCCJEA or § 1738A provision, without affording the opportunity of *due process*, which permits the federal district court to hear claims that a federal right has been infringed.

6.      Sloan did not effectuate Kansas, or § 1738A law of Good Faith and Credit law, which is the standard of law, held by Kansas statute as well:

7.      Even if Defendant Sloan issued a justifiable case, the case would still have to be transferred to Illinois. View argument written by Kansas Attorney.

8.      Sloan is not a custody judge under UCCJEA. Sloan is a dependency judge under CINC child welfare.

o   **K.S.A. 38-2203(f).**

*A civil action for a custody determination is open and pending in Illinois: In the State of Illinois Circuit Court, Cook County, Jorel Shophar v Krissy Gorski, Petition for Allocation of Parental Responsibilities, Case No. 2019D079387 . It is exactly the type of "comparable [civil] case in another jurisdiction" contemplated by **K.S.A. 39-2203(f)** that will be subject to the UCCJEA, in which civil orders may be entered pursuant to the UCCJEA that would take precedence over orders entered in these instant Kansas CINC proceedings.*

*Kansas is **no longer** the appropriate or proper jurisdiction because there is an action concerning the children pending in Illinois, where Jorel Shophar has resided for more than six (6) months; and because the mother Krissy Gorski likewise does not reside in Kansas and has not resided in Kansas in the past six (6) months.   When "the child's parents, and any person acting as a parent do not presently reside in [Kansas]", Kansas is no longer properly the "home state of the child".   **K.S.A. 23-37, 201(a)(1).***

o *Because § 1738A permits only **one state** at a time to assert jurisdiction, a **federal court could in certain cases** enforce a decree without becoming enmeshed in the underlying custody dispute...*

9.　From 2015 – 2023 said defendants have violated Federal Law pursuant to Parental Kidnapping Prevention Act (PKPA) by trafficking minors throughout the states to unjustifiably create jurisdiction in improper venues.

10.　From 2015 – 2023 said defendants have contacted foreign states including, Michigan, Colorado, Missouri, and now Illinois, submitting fraudulent documents, defamatory statements, false statements and false domiciles to sway agencies, attorneys, and judicial officers from rightful venues and Decrees.

11.　On June 1, 2023 Honorable Judge Boyd Decreed Jurisdiction in Illinois based on Shophar's domicile and 4 year litigation, (View Exhibit A) on June 2, 2023 Shophar's family sought the minors in Missouri in Kansas.

12.　Said Defendants in Missouri and Kansas refused to give the whereabouts of the minors, which prompted Shophar to file a Habeas Corpus on June 12, 2023.

13.　Case: 1:23-cv-03689 Document #: 10, Honorable Pallmeyer stated Plaintiff Jorel remains **free** to re–file his case, asserting claims in his own capacity. Case: 1:23-cv-03689 Document #: 10 Filed: 06/27/23 Page 1 of 1 Page ID #:85.

14.　Since 2015 – 2023 the minors have been illegally hidden and trafficked to multiple states including, Michigan, Illinois, Missouri, Kanas, Texas, Colorado, and Minnesota.

4

15.    Grace Shophar is the only daughter, a recent High School Honor roll graduate, maintaining a 4.2 GPA, aspiring to become an Elementary Teacher with the ultimate goal to become a Federal Attorney as a Guardian ad Litem - to protect the best interest of minor children.

16.    Raphah Shophar, the firstborn son, is a young businessman, minister of Music of the United States Church and in college for Residential Development, having maintained a 3.7 GPA at graduation.

17.    Sasuah Shophar, (Jorel's wife) and natural mother of Raphah and Grace Shophar, is a director of Child Development by profession, and a minister for the United States Church.

18.    The father Jorel Shophar is a businessman, and Minister with United States Church.

19.    Each of the Defendants resides in a state other than Illinois.

20.    This Court has jurisdiction over the subject matter of the Plaintiffs' claims, pursuant to 28 U.S.C. § 1332. The Shophars and Defendants being citizens of different states, and the amount in controversy exceeding $75,000.

21.    This Court may exercise personal jurisdiction over the Defendants because they had sufficient contact with Illinois for this Court to exercise jurisdiction, in that, Defendants have directed conduct in Illinois sufficient for this Court to exercise specific personal jurisdiction over them.

22.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

23.     Mr. Shophar and Raphah Shophar filed complaints against state actors', affiliates, private agencies, and individuals in the Northern Illinois U.S. District for deprivations, discrimination, violations of constitutional rights, defamation, kidnapping and sexual abuse, and physical abuse to minors in case **NO: 1:22-CV-02333** before Honorable U.S. Judge: Franklin U. Valderrama.

24.     U.S. Judge Franklin U. Valderrama allowed for an Amended Complaint to align the deficiencies in the claim, which was re-presented to the Court by Shophar's Attorney Bob Kuehl and filed on **June 21, 2023.**

25.     Attorney Bob Kuehl is currently out of the country.

26.     Beginning **June 1, 2023**, the Defendants acted in retaliatory conduct and maliciously sent defamatory material to various individuals and entities in Illinois, where the tortious conduct occurred, and where members of the Shophar family were injured. *See Majumdar v. Fair*, 567 F.Supp.3d 901, 911, 912, 914, 915 (N.D. Ill. 2021); *see also Lord v. Smith*, No. 22 C 2689, 2023 U.S. Dist. LEXIS 95959, at *2-3, 8 (N.D. Ill. June 2, 2023).

27.     The entities and individuals included an Illinois Server, Illinois Elgin Police Department, Cook County Illinois Clerks, Illinois Circuit Court Judge, and an Illinois attorney.

28.     Private investigations conducted, showed J.S. and B.S. minors were subjected to criminals, criminal activities and drug activities in the State of Missouri and the State of Kansas (possibly in the State of Illinois, Michigan, and Texas) under the control of Gorski and the  Defendants, which ultimately resulted in the J.S and B.S. minor being physically and sexually abused.

6

29.     Written reports affirmed that abuse to minors was committed by criminals in various states, however the Defendants strategically defamed the Shophar family in Illinois, to avoid the interference of the State of Illinois review.

30.     A major matter at hand involves multiple States, regarding jurisdiction over two U.S. citizens, J.S. and B.S., **who are missing**. There are 450,000 reports of minors that go missing in the United States every year.

31.     Pursuant to 28 U.S.C. § 1738 the U.S. government passed legislative law to protect the rights of minors and parents who may be subjected to state-to-state trafficking under PKPA, and jurisdictional disagreements and quarrels.

32.     There is a Federal Question pursuant to 28 U.S.C. § 1331 involving four States: including, Michigan, Illinois, Kansas, and Missouri, based on the U.S. legislative law of Good Faith and Credits pursuant to 28 U.S.C. § 1738.

33.     On **June 1, 2023** Honorable Judge William Boyd, Decreed in Case: 201979387, JURISDICTION over two minors, to be returned to State of Illinois pursuant to UCCJEA, **§ 750 ILSC 36/201.**

**34.**     Minors domicile is the State of Missouri from June 1, 2020 to present date, **over three years.**

ii.     **Statement of Facts January 2022 – July 2023**

35.     February 2022 the minors were taken by Krissy Gorski (hereafter "Gorski") to unknown subjects, Defendants Derk Hanna, Regina Hanna, Justin Danner, and Annie Danner, who are all residents of the State of Missouri.

**36.**     March 3, 2022 Krissy Gorski was convicted on felony charges of drug distribution and sentenced to 5 years in prison – **Case 20-20018-02-DDC.**

37.    On March 7, 2022, Shophar learned of her conviction and contacted his Attorney in the State of Missouri to file a Motion of Jurisdiction in Missouri.

38.    March 27, 2022 the Missouri Attorney was contacted by Sloan via phone, though there was no acting case in Kansas, all cases were released of jurisdiction and closed on February 4, 2022.(View Exhibit A – and Exhibit A)

39.    The self-same day of March 27, 2022 Sloan contacted Gorski in prison, and Gorski's affiliate Annie Danner, and ordered her to bring the minors across the border from Missouri to Kansas, to the Overland park police Station.

40.    Annie Danner took the minors to the Overland Park police station where Kansas Department of Children and Families was called to the scene. Kansas DCF did not place the children under Kansas Authority.

41.    Annie Danner returned to Missouri with the minors.

42.    There was NO active case.  All contacts from Sloan to the Missouri Attorney, Gorski, and Annie Danner were done outside the judges' capacity.

43.    On April 5, 2022 Sloan held a hearing in Johnson County Kansas, intentionally excluding Shophar, and ordered Missouri residents Regina Hanna, and Annie Danner to cross the Missouri border to appear in a Kansas Court.

44.    On April 5, 2022 Sloan opened a new Temporary CINC case, with a falsified petition stating, "children were found in a county of Kansas" though minors were left in Jackson County Missouri.

45.    April 5, 2022 CINC case also falsely claimed "Shophar abandoned his children" and went to Michigan. In May of 2017 Gorski illegally took minors to Michigan, which prompt Shophar to pursue his children to protect them.

46.     After multiple attempts by Shophar to file in Jackson County Missouri, Shophar's case was docketed on April 13, 2022.

47.     From April 5, 2022 to August of 2022 Sloan denied Shophar any access to the Kansas Court, even after multiple filings by Shophar to appear on the case for his children.

48.     Finally on August 11, 2022 Shophar was allowed in a first appearance hearing via zoom from the State of Illinois. Shophar filed a complaint to Kansas Judicial Ethics to no avail. Shophar objected to a proffer hearing scheduled and Kansas jurisdiction or any cases in Kansas.

49.     Shophar has not been to the State of Kansas in **6 years.**

50.     June of 2022 and August of 2022, the minors were illegally trafficked by the Defendants, to Colorado, and Minnesota at the request of Gorski who is in Minnesota federal prison, violating the Parental Kidnapping Prevention Act (PKPA).

51.     Gorski was communicating from Federal prison, seeking to change the minors' domicile, to interfere with pending cases in Illinois and Missouri.

52.     Shophar filed an Appeal in the Kansas Appellate Court for cases 22JC181 and 22JC182 – the Kansas Appellate Court dismissed the case citing "lack of jurisdiction." Sloan never adjudicated cases 22JC181 and 22JC182, the cases were dismissed by the Kansas Appellate Court.

53.     From February 2022 to December of 2022 the minors J.S. and B.S. remained with Derk Hanna, Regina Hanna, Annie Danner, and Justin Danner in the State of Missouri.

9

54. On October 6, 2022 Shophar was in a hearing with Judge Dube of the State of Missouri, who ordered a Guardian ad Litem and for the Residents with the minors to appear. A Hearing was set for December 1, 2022.

55. In November of 2022 Sloan initiated contact with Judge Dube of the State of Missouri and requested a Conference under the UCCJEA

56. On November 10, 2022 a UCCJEA conference was held in the State of Missouri, where it was concluded that the children were in the State of Missouri.

57. Sloan gave false information to the Missouri Court that the minors were only in Missouri for two weeks.

58. On November 14, 2022 Sloan held a hearing in Kansas, denying Shophar access to the Court.

59. Gorski filed a Motion for compassionate release from Federal prison, which would have been an immediate release. On November 14, 2022 in this hearing Sloan advocated for Gorski, saying "I hope you get and early release from prison so that I can give you your children back."

60. September 2022 U.S. Judge Crabtree denied release. Exhibit H

61. There were no orders written from the State of Kansas for the November 10, 2022 conference held in Missouri.

62. Missouri declined jurisdiction based on false information given by Sloan, the minors remained with Annie Danner, Justin Danner, Regina Hanna, and Derk Hanna in Missouri.

63.   Shophar was instructed by the Missouri Attorney not to participate in any court cases in Kansas stating, "Illinois has jurisdiction over the minors."

64.   November of 2022 in Illinois, Judge Boyd was given details of conference in the State of Missouri.

65.   Illinois Judge Boyd requested that a Motion be filed in Missouri for a conference.  The day the Motion was filed the case was dismissed.

66.   February 2023 Judge Boyd requested that a Motion for UCCJEA conference be filed in Kansas.  Shophar filed the Motion, but the clerks of Johnson County did not docket his filing.

67.   May 2023 Honorable Judge Boyd ordered Krissy Gorski to be served with a petition for Custody at the Waseca Women Federal Prison in Minnesota.

68.   **June 1, 2023** Honorable Judge Boyd Decreed custody to Shophar under the UCCJEA provisions in accordance with 28 U.S.C. § 1738.

69.   In June of 2023 after Judge Boyd's Order, Sloan "initiated" contact with Judge Boyd and sent defamatory documentations to Judge Boyd regarding the entire Shophar family.

70.   Sloan also made "no-contact" orders against the entire Shophar family to their siblings and sent to Judge Boyd. (See Exhibit – B, C, D, and E)

71.   The Shophar family never received any orders from Kansas.

72.   Sloan did not request a UCCJEA conference with Judge Boyd pursuant to 28 U.S.C. § 1738. Sloan only had a phone conversation with Judge Boyd without court record, defaming the entire Shophar family as "abusers", which is not privileged.

11

73. Sloan submitted to Judge Boyd invalid orders, contrived from November 10, 2022, and signed with the date June 16, 2023 – 8 months later.

74. A Paternity case in Kansas was terminated **December 13, 2016,** nearly **7 ½ ago**. Sloan falsely stated there was a pending custody case.

75. Sloan submitted invalid orders and false information concerning the minors' domicile, to the Illinois Judge, causing him to sway from his order, which ultimately Judge Boyd VACATED his orders on July 10, 2023.

### iii.    <u>**Argument and Authorities**</u>

76. An essential element of the protection under the 14th Amendment is *due process.* In the absence of *due process,* individuals deprived of their freedom, liberty, and rights are without just cause. *Troxel v. Granville,* the Due Process Clause protects the "fundamental **right** of **parents** to make decisions concerning the care, custody, and control of their children.". *Stanley v. Illinois,* under both the federal and state constitutions, a **parent** has a fundamental **right** to the care, custody, and control of his or her own child., 405 US 645, Supreme Court 1972.

77. The U.S. District of Northern Illinois is the proper venue for this grievance for the Plaintiffs to present evidence that was not allowed, due to Sloan's mere phone call. The Appellate court does not consider new evidence.

78. Grace Shophar, who turned 18 years old this day of **July 12, 2023,** being falsely accused, files this Complaint in her own capacity, having no remedy to satisfy "due process" and her First Amendment right, based on these facts.

i.     Grace Shophar is not a party to any case in Kansas, and therefore cannot file an Appeal in the State of Kansas.

ii.    Kansas does not have jurisdiction over Grace Shophar, which limits her any ability to seek remedy for a cause of action against her.

iii.   Grace Shophar is a citizen of the State of Illinois, but is not a party to Jorel Shophar's case, and therefore cannot file an Appeal to undo the deficient and invalid orders set forth in Kansas, which was sent to an Illinois Judge.

iv.   The U.S. District is the only remedy for Grace Shophar to seek justice for an unwarranted, and nefarious order, brought against her by a foreign judicial bench.

79.    Raphah Shophar filed this Complaint in his own capacity, having no remedy for being falsely accused, other than the U.S. District Court to satisfy "due process" and his First Amendment right, based similar facts.

i.     Raphah Shophar is not a party to any case in Kansas, and therefore cannot file an Appeal in the State of Kansas.

ii.    Kansas does not have jurisdiction over Raphah Shophar, which limits his any ability to seek remedy for a cause of action against him in any Kansas Court.

iii.   Raphah Shophar filed a request in the State of Kansas to be an interested party in March of 2021 but was denied and removed.

iv.   Raphah Shophar is a citizen of the State of Illinois and **is** a party to Jorel Shophar's case in Illinois, but is unable to file an Appeal, due

to Defendant Sloan's documents not presented in Illinois Court docket records but sent to Judge Boyd only.

v. The deficient and invalid orders set forth in Kansas, which was sent to an Illinois Judge, were not given the proper statutory protocol of a Conference between two States pursuant to the UCCJEA provisions or § 1738, to place on record, therefore an Appeal to the Illinois Appellate Court would not be feasible without Court records.

vi. The U.S. District is the only remedy for Raphah Shophar to seek justice for an unwarranted, nefarious, and invalid orders, brought against him by a foreign judicial bench.

80. Sasuah Shophar filed this Complaint in her own capacity, having no remedy other than the U.S. District Court of Illinois to satisfy "due process" and her First Amendment right, based similar facts.

i. Sasuah Shophar is not a party to any case in Kansas, and therefore cannot file an Appeal in the State of Kansas.

ii. Kansas does not have jurisdiction over Sasuah Shophar, which limits her any ability to seek remedy for a cause of action against her for alleged abuse.

iii. Sasuah Shophar filed a request in the State of Kansas to be an interested party in March of 2021 but was denied and removed.

iv. Sasuah Shophar is a citizen of the State of Illinois, and is not a party to Jorel Shophar's case, and is unable to file an Appeal, due to Defendant Sloan's filing not being filed on Illinois Court records. The

deficient and invalid orders set forth in Kansas, which was sent to an Illinois Judge, were not given the proper statutory protocol of a Conference between two States pursuant to the UCCJEA provisions or § 1738, to place on record, therefore an Appeal to the Illinois Appellate Court would not be feasible without Court records.

v. The U.S. District is the only remedy for Sasuah Shophar to seek justice for an unwarranted, nefarious, and invalid order, brought against her by a foreign judicial bench.

81. Lastly, Jorel Shophar files this Complaint in his own capacity, having no remedy other than the U.S. District Court of Illinois, to satisfy "due process" and his First Amendment right, based on similar facts.

i. Jorel Shophar is not a party to any case in Kansas, and therefore cannot file an Appeal in the State of Kansas.

ii. Jorel Shophar was denied access to Kansas courts dating back to 2015 – to 2023. Shophar was removed from the Court of Kansas without any cause of action of April 5, 2022 – which was dismissed.

iii. In the recent filings in Kansas in April of 2022, Shophar was not informed or properly served, albeit court proceedings were held against Shophar in his absence, denying him any "due process."

iv. Kansas does not have jurisdiction of Jorel Shophar, which limits him any ability to seek remedy for a cause of action against him.

v.   Jorel Shophar has been falsely recorded as "absent" in the State of Kansas. Kansas agencies also posted public filings against Shophar in the State of Illinois newspaper, stating Shophar is absent.

vi.  Jorel Shophar filed a request in the State of Kansas as the father of J.S. and B.S. but has been denied access to a Kansas Court since 2015 –2023, thus hereto Shophar vehemently rejects Kansas courts.

vii. Jorel Shophar filed Appeals, Mandamus, Motion for reviews in Kansas Supreme Court and Appellate Court to no avail, having his cases removed by the Kansas clerks, falsely documented as absent, denied, rejected, and filings not docketed in Kansas Appellate courts, and Johnson County courts.

vii. Jorel Shophar is a citizen of the State of Illinois and is a party to Illinois Cook County case: 2019 D79387, and is unable to file an Appeal, due to Defendant Sloan's documents not presented in Illinois Court docket records.

viii. The deficient and invalid orders set forth in Kansas, which was sent to an Illinois Judge, were not given the proper statutory protocol of a Conference between two States pursuant to the UCCJEA provisions or § 1738, to place on record, neither has Shophar ever received any of the records or orders by Defendant Sloan, therefore an Appeal in the Illinois Appellate Court would not be feasible without Court records.

ix.   The U.S. District is the only remedy for Jorel Shophar to seek justice for an unwarranted, nefarious, and invalid orders, brought against him by a foreign judicial bench in a foreign state.

x.   Finally, under the rules defined by § 1738A, if two states render decrees, one state has asserted jurisdiction in violation of federal law. In this case, Plaintiffs can bring this action in the Federal Court on a Federal Jurisdiction question to resolve the matter.

82.   *As the legislative scheme suggests, and as Congress explicitly specified, one of the chief purposes of the PKPA is to "avoid jurisdictional competition and conflict between State courts." Pub. L. 96-611, 94 Stat. 3569, § 7(c)(5), note following 28 U. S. C. § 1738A.*

83.   In *Flood v. Braaten*, the U.S. Third Circuit Court of Appeals ruled that Federal courts are a proper forum for resolving the impasse created by competing decrees of two States.

84.   On **June 1, 2023** Honorable Judge Boyd in case: 2019D 79387 Decreed Jurisdiction over the minors to be returned to Illinois.

85.   §1738A had concluded that "federal question jurisdiction exists to enforce compliance with PKPA where courts of two states asserted jurisdiction over a custody determination." in *Rogers v. Platt, 1986*

86.   § 1738A permits only one state to assert jurisdiction, in this matter Illinois asserted jurisdiction on **June 1, 2023**. The State of Kansas asserted to claim jurisdiction after the State of Illinois on **June 16, 2023** and is inconsistent with **§ 750 ILCS 36/206** and **Kansas UCCJEA 206** – Simultaneous proceedings

...*Court cannot exercise its jurisdiction unless the proceeding has been terminated or is stayed by the court.* Kansas Court proceedings were terminated on **December 13, 2016**. Kansas improperly claimed jurisdiction after Illinois.

87.    The June 16, 2023, Journal entry of Kansas can be proven to be invalid on its face and shown to be issued to counter the State of Illinois decree issued on June 1, 2023.

88.    Defendant Sloan never initiated any contact with the Illinois Judge in four years although having full knowledge of the pending case since 2019.

89.    Pursuant to Kansas' own statute **K.S.A 60-258** - *no judgement is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk.* The Kansas Journal entry was signed **June 16, 2023,** for a November 10, 2022 Conference – View Exhibit G. Illinois' jurisdiction was properly asserted on **June 1, 2023** and Kansas' jurisdiction assertion was not. Kansas Journal entry can be declared as void, invalid and must be vacated.


### iv.    **Factual Background June 2017 – December 2021**

90.    J.S. and B.S. were illegally taken by Gorski back to birth state of Michigan May 24, 2017.  Then December of 2017 illegally taken to Missouri.

91.    Then in January of 2018 trafficked to State of Illinois, then back to Kansas in February 2018.

92.    Gorski was arrested in the State of Kansas for DUI on Meth on March 28, 2018. Then June of 2019, Gorski relocated to Missouri alone and was arrested September 12, 2019 for possession of illegal drugs and convicted.

18

93. Thereafter, J.S. and B.S. were illegally crossed over the border from Kansas to the State of Missouri June 1, 2020, where they resided with Gorski.

94. The minors in question remained as domicile of the State of Missouri for 3 years to present time according to records.

### Count I – Defamation Per Se
### Raphah Shophar and Grace Shophar v. Kathleen Sloan

95. On or about June 21, 2023, Defendant Sloan initiated a phone conversation with the Circuit Court of the Cook County and spoke with the Clerks and Judge Boyd off Court record, sending numerous documents.

96. Within the communication, Defendant Sloan stated the entire Shophar family had orders against them, falsely claiming they were perpetrators of physical, sexual, mental, and emotional abuse. (Exhibits C,D,E, and F)

97. Further, the invalid Order claims, "Grace and Raphah's continued contact with their own siblings are detrimental to the best interest of the minors."

98. The statements were false, unprivileged and were not authorized by the law. Sloan did not satisfy the **Illinois UCCJEA 750 ILCS/36/110**, or **Kansas UCCJEA 110**, which required Sloan to promptly inform the Plaintiffs of the communication with Illinois and grant access to the record. A record was required to be made of the communication.

99. Sloan made the false statements in the absence of a UCCJEA conference and § 1738, off Court record, to shed a negative light on the Shophar family in the State of Illinois that has harmed the whole family reputation.

100. The false defaming statements have harmed Grace and Raphah and imputes the commission of an indicatable criminal offense and has prejudiced Grace as a University Student aspiring to be an Elementary Teacher with an ultimate goal of becoming a Guardian ad Litem attorney to protect the best interest of children; and Raphah as a minister and an aspiring Home developer.

101. As a direct result of these false statements and documents sent to Illinois, Grace and Raphah have suffered tremendously, emotionally, fearing malicious prosecution, including injury to their bright future and their reputation. *Proverbs 22:1 – A **good name is rather to be chosen** than great riches, and loving favor rather than silver and gold.*

102. The statements were made with knowledge of their falsity. Sloan acted as a trespasser of the law, having no jurisdiction, so as to justify an award of declaratory decree against the contrived invalid orders.

WHEREFORE, Grace and Raphah seek declaratory decree of all orders made in made in violation of the law, due process and further relief as the court deems appropriate.

### *Count I – Defamation Per Se*
### Sasuah Shophar v. Kathleen Sloan

103. Sasuah Shophar realleged paragraphs 94 – 95 and 97 - 98 above as paragraph 102 of Count I as though fully set forth.

104. Further, claiming Sasuah's continued contact with minor siblings is detrimental to the best interest of the minors.

20

105.  The false defaming statements have harmed Sasuah and imputes the commission of an indicatable criminal offense and has prejudiced Sasuah as a Child Development professional.

106.  As a direct result of these false statements and documents sent to Illinois, Sasuah has suffered tremendously, emotionally, fearing malicious prosecution, including injury to her future in the Child Development field and her reputation. *Proverbs 22:1 – A **good name is rather to be chosen** than great riches, and loving favor rather than silver and gold.*

107.  The statements were made with knowledge of their falsity, Defendant Sloan acted as a trespasser of the law, having no jurisdiction, so as to justify an award of declaratory decree against the contrived invalid orders.


WHEREFORE, Sasuah seeks declaratory decree of all orders made in violation of the law, due process and further relief as the court deems appropriate.

### Count I – Defamation Per Se
**Jorel Shophar v. Kathleen Sloan**

108.  Jorel Shophar realleged paragraphs 94 – 95 and 97 - 98 above as paragraph 107 of Count I as though fully set forth.

109.  Further claiming Jorel's continued contact with his minors is detrimental to the best interest of the minors.

110.  The false defaming statements have harmed Jorel and imputes the commission of an indicatable criminal offense, and has prejudiced Jorel as a minister, businessman and Father.

21

111.   As a direct result of these false statements and documents sent to Illinois, Jorel has suffered tremendously, emotionally, financially, fearing malicious prosecution, including injury to his parental rights, ministry, business, and reputation.  *Proverbs 22:1 – A **good name is rather to be chosen** than great riches, and loving favor rather than silver and gold.*

112.   The statements were made with knowledge of their falsity, Defendant Sloan acted as a trespasser of the law, having no jurisdiction, so as to justify an award of declaratory decree against the contrived invalid orders.

WHEREFORE, Jorel seeks declaratory decree of all orders made in violation of the law, due process and further relief as the court deems appropriate.

### *Count I – Defamation Per Se*
### **Grace Shophar and Raphah Shophar v. Teena Wilkie and Nathan Wilkie**

113.   From 2015 through 2023, among other things, Defendant Wilkies have made knowingly false reports that minor siblings do not want to see Raphah, Grace, and youngest 8-year brother E.S., to alienate all of the siblings indefinitely.

114.   *William W. Patton, The World Where Parallel Lines Converge: The Privilege Against Self-Incrimination in Concurrent Civil and Criminal Child Abuse Proceedings, 24 GA. L. REV. 473, 491 (1990). Sibling relationships become even more important when children are separated from their parents. Child attachment literature shows that children separated from parents often form sub-families "with one child assuming the parental responsibility for another." Id. In such cases, these sibling bonds are even stronger than bonds of other children to their parents.*

22

*Id* Siblings who are separated "may never resolve their feelings of loss, even if there are new brothers and sisters whom they grow to love." *Id* at 491-92.

115. On June 2, 2023 Grace and Raphah authorized by a Court Order from Illinois sought to retrieve their siblings from the control of non-related Defendants Derk, Regina, Annie, and Justin in Missouri where minors were last known to be residing.

116. Teena, Nathan, Derk, Regina, Annie and Justin conducted in unjustifiable conduct to relocate (or trafficked, abducted, kidnapped) sibling minors from the State of Missouri, where minors were left by a parent, to hide their whereabout, to illegally be trafficked in Kansas in violation to PKPA (Parental Kidnapping Prevention Act).

117. On or about June 13, 2023, Defendants Wilkies conducted an unjustifiable conduct to conspire to create false claims against Grace, minor at the time, Raphah, Sasuah, and Jorel in Illinois, to maliciously allege the Plaintiffs harassed the Wilkie's at their home and allege them as perpetrators of abuse to J.S. and B.S.

118. Defendant's Wilkie obtained the "no-contact" orders against Grace, Raphah, Sasuah, and Jorel to maliciously send the false orders to the State of Illinois to defame the character of Grace, Raphah, Sasuah, Jorel, to incriminate them as perpetrators of abuse against minors to cause hardship to their efforts of reuniting as a family. View Exhibit C, D, E, F

119. The Wilkies sent the defamatory material to the State of Illinois in retaliation to Grace, Raphah and Sasuah seeking the return of their minor

siblings to the State of Illinois authorized by June 1, 2023 Court Order by an Illinois Judge.

120. The defamatory material statements caused the Elgin Police Department to be called to the Shophar's home ensuing a report, viewing Grace, Raphah, Sasuah and Jorel in a negative light as perpetrators to minors.

121. The false defaming statements have harmed Grace and Raphah and imputes the commission of an indicatable criminal offense and has prejudiced Grace as a University Student aspiring to be an Elementary Teacher with an ultimate goal of becoming a Guardian ad Litem attorney to protect the best interest of children; Raphah as a minister and an aspiring Home developer.

122. As direct and proximate result of the material, Grace and Raphah have suffered tremendously, emotionally, fearing malicious prosecution, including injury to their reputation and bright future.

123. The statements were made with full knowledge of being false, so as to justify an award of punitive damages.

WHEREFORE, Grace and Raphah seek an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### Count I – Defamation Per Se
**Sasuah Shophar v. Teena Wilkie and Nathan Wilkie**

124. From 2015 through 2023, among other things, Defendant Wilkies have made knowingly false reports that minor siblings do not want to see Sasuah to erase the memory the minors had with Sasuah. Sasuah was a caregiver for

the minors from their birth till August 2015 when the Wilkies took the minors out of their beds while Shophar was working to provide for his children. The Wilkies provided opioids to Gorski, and assisted Gorski as she prostituted, which lead Gorski to relapse to heroin and meth addiction and criminal activity, that ultimately lead Gorski to Federal prison, and children abused by criminals.

125. Sasuah Shophar realleged paragraphs 115 through 119 above as paragraph 124 of Count I as though fully set forth.

126. The false defaming statements have harmed Sasuah and imputes the commission of an indicatable criminal offense and has prejudiced Sasuah as a Child Development professional.

127. As direct and proximate result of the material, Sasuah has suffered tremendously, emotionally, fearing malicious prosecution, including injury to her reputation.

128. The statements were made with full knowledge of being false, so as to justify an award of punitive damages.

129. As a direct result of these false statements and documents sent to Illinois, Sasuah has suffered tremendously, emotionally, fearing malicious prosecution, including injury to her future in the Child Development field and her reputation. *Proverbs 22:1 – A **good name is rather to be chosen** than great riches, and loving favor rather than silver and gold.*

WHEREFORE, Sasuah seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### *Count I – Defamation Per Se*
**Jorel Shophar v. Teena Wilkie and Nathan Wilkie**

130. From 2019 – to present 2023, the Defendants knowingly made false statements against the Jorel, to deprive the minor from reuniting with their family in the State of Illinois.

131. From 2015 through 2017, among other things, Defendants have made knowingly false reports that Shophar abused his minor children, and that his children are afraid of him.

132. Jorel Shophar realleged paragraphs 115 through 119 above as paragraph 142 of Count I as though fully set forth.

133. The false defaming statements have harmed Jorel and imputes the commission of an indicatable criminal offense and has prejudiced Sasuah as a Child Development professional.

134. As direct and proximate result of the material, Jorel has suffered tremendously, emotionally, fearing malicious prosecution, including injury to ministry, business, parental rights and reputation.

135. The statements were made with full knowledge of being false, so as to justify an award of punitive damages.

136. As a direct result of these false statements and documents sent to Illinois, Jorel has suffered tremendously, emotionally, financially, fearing malicious prosecution, including injury to his parental rights, ministry, business, and reputation. *Proverbs 22:1 – A **good name is rather to be chosen** than great riches, and loving favor rather than silver and gold.*

WHEREFORE, Jorel seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

*Count II Due Process Violation*
**Grace Shophar and Raphah Shophar v. Kathleen Sloan**

137. Defendant Sloan issued no contact orders against Grace, Raphah, Sasuah, and Jorel in violation of the law that alleges the Shophar family are perpetrators of physical, sexual, mental, or emotional abuse of the siblings J.S. and B.S. with terms that are enforceable by law enforcement, and a penalty prosecution and conviction if violated. View Exhibit C, D, E, F. Further, claiming continued contact with the Shophars is detrimental to the best interest of their own siblings.

138. Defendant Sloan did not send the "no contact" orders to the Plaintiffs but were only sent to Illinois to the Circuit Court clerks and its Judge, off Court records to mischaracterize the Plaintiffs.

139. Defendant Sloan exerted jurisdiction over nonresidents in violation to fair play and procedural justice in the Constitution. Defendant Sloan failed to comply with the elementary principles of procedural due process.

140. Defendant Sloan deprived Grace, Raphah, Sasuah, and Jorel their statutory right to reside, visit or contact and reclaim the minors without first giving the Plaintiffs the opportunity to their due process right.

141. Defendant Sloan acted out of clear absence of jurisdiction over the non-resident Grace, Raphah, Sasuah, and Jorel.

142. Defendant Sloan issued orders against Grace, Raphah, Sasuah, and Jorel without giving them a meaningful opportunity to defend themselves against the false allegations alleging them as perpetrators of abuse against the minors.

143. Defendant Sloan issued the order against Plaintiff Grace being a minor at the time which is against the best interest of a child altogether.

144. Defendant Sloan denied Raphah and Sasuah to be an interested party to enter the Kansas case in 2018-2021. Grace was never allowed access to Courts in Kansas being a minor.

145. Defendant Sloan did not provide prior notice to the Plaintiffs prior to a proceeding as required by due process to deprive any rights. The order does not even show the date the hearing took place or time and does not have a certificate of service.

146. Defendant Sloan did not offer the Grace, Raphah, Sasuah, and Jorel an opportunity to be heard, present their objections or the right to present evidence in their defense before rights were deprived or being found to be perpetrators.

147. Grace, Raphah, Sasuah and Jorel do not have the opportunity to challenge, seek remedy or the opportunity to appeal for corrections of Defendant Sloan's invalid order anywhere.

148. Defendant Sloan deprived Grace, Raphah, Sasuah, and Jorel's statutory right to reside, visit or contact their minors without first giving the Plaintiffs the opportunity to their due process right.

149. Defendant Sloan acted as a trespasser of the law, having no jurisdiction to issue orders, no evidence to support findings and having knowledge of their falsity, so as to justify an award of a declaratory decree.

WHEREFORE, Grace and Raphah seek declaratory decree of all orders made in violation of the law, due process and further relief as the Court deems appropriate.

### *Count II Due Process Violation*
### **Sasuah Shophar v. Kathleen Sloan**

150. Sasuah realleged paragraphs 136 through 147 above as paragraph 149 of Count II as though fully set forth.

151. Defendant Sloan acted as a trespasser of the law, having no jurisdiction to issue orders, no evidence to support findings and having knowledge of their falsity, so as to justify an award of a declaratory decree.

WHEREFORE, Sasuah seeks declaratory decree of all orders made in violation of the law, due process and further relief as the Court deems appropriate.

### *Count II Due Process Violation*
### **Jorel Shophar v. Kathleen Sloan**

152. Jorel realleged paragraphs 136 through 147 above as paragraph 151 of Count II as though fully set forth.

153. Defendant Sloan acted as a trespasser of the law, having no jurisdiction to issue orders, no evidence to support findings and having knowledge of their falsity, so as to justify an award of a declaratory decree.

WHEREFORE, Jorel seeks declaratory decree of all orders made in violation of the law, due process and further relief as the Court deems appropriate.

### *Count III – Intentional emotion distress, injury*

**Jorel Shophar v. Teena Wilkie and Nathan Wilkie**

154. Indeed, the Supreme Court of the United States has characterized a parent's right to raise his or her child as "perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000).

155. In 2015, Defendant Teena assisted Gorki secretly to kidnap Jorel's children from his home without his consent.

156. From 2015 to present Defendant Wilkies willfully and intentionally interfered with Jorel's parental relationship with his minors.

157. From 2015 through 2017 Defendant Wilkies assisted Gorski to file false claims of abuse to receive state funding and to prevent / interfere with Jorel's parental rights to maintain relationship with his children.

158. State of Kansas CINC actions were terminated on **February 4, 2022**. Jurisdiction was also released by Defendant Sloan.  View Exhibit B

159. Gorski submitted to Federal Prison custody on March 7th, 2022 and left J.S. and B.S. with Missouri residents; Derk Hanna, Regina Hanna, Annie Danner, and Justin Danner, who passed minors around homes of Missouri residents, and Kansas affiliates Nathan Wilkie and Teena Wilkie, all in efforts to interfere with a state domicile for the minors and to hide whereabout of the minors from Jorel to prevent him from retrieving his minors.

160. From 2015 through 2017 Nathan Wilkie and Teena Wilkie assisted Gorski with opioids, which lead to illegal drug abuse, criminal activity and abuse to Shophar children, causing emotional distress to the Shophar family.

161. From 2015 to 2017 Nathan Wilkie and Teena Wilkie assisted Gorski as she prostituted and paid the Wilkie to watch the minors while she engaged in criminal activity, especially illegal drug distribution and consumption.

162. In May of 2017, **Nathan Wilkie, Teena Wilkie, KVC Health, Cornerstone Care, and Casa Child Advocacy** assisted Gorski with moving to the State of Michigan illegally, violating the Parental Kidnapping Prevention Act.

163. From May of 2017 to December 2017, Nathan Wilkie, Teena Wilkie, KVC Health, Cornerstone Care, and Casa Child Advocacy assisted Gorski to move back to the Kansas City Metropolitan area, after Shophar found Gorski in Michigan and filed an Emergency case **2017-856409-DC** Oakland County.

164. The State of Kansas action was terminated on **December 13, 2016.** Any pleadings, Journal Entry's, Orders, or Actions are deficient on its face.

165. From 2017 – to present 2023, the Defendants and **KVC Health, Cornerstone Care, and Casa Child Advocacy** knowingly placed J.S. and B.S.

31

in criminal settings, under their control, which expose the minors to "strangers" engaging in sexuality and violence and illegal drug use, which resulted in the children becoming subjects to sexual abuse and violence by individuals who sought out prostitution in the home of Krissy Gorski.

166. 2022 - 2023, Teena, Nathan, Derk, Regina, Annie and Justin **KVC Health, Cornerstone Care, and Casa Child Advocacy** conducted in unjustifiable conduct to relocate (or trafficked, abducted, kidnapped) sibling minors from the State of Missouri, where minors were left by a parent to hide their whereabouts from Jorel.

167. Minors were taken across state boards without the consent and knowledge of Jorel.

168. Defendant Teena and Nathan hid the minors from the Jorel to create improper jurisdiction over the minors in Kansas for the purpose of bringing hardship to Jorel who had a UCCJEA case in Illinois and was awarded custody rights of the minors on June 1, 2023.

169. Defendant Wilke's intentionally detained minors from the Shophars.

170. Defendant Teena and Wilkie maliciously sought to create false claims in to be sent to Illinois to prevent Jorel from retrieving his sons.

171. As a direct and proximate result of Defendant Teena and Willkie unjustifiable conduct to create improper jurisdiction thorough and by false no contact orders, Jorel has suffered tremendously, emotional including injury to his reputation, parental rights, and UCCJEA case in the State of Illinois.

172. The conduct of Teena and Nathan Wilkie was intentional with the sole purpose of interfering with harming the parental rights of Jorel.

WHEREFORE, Jorel Shophar seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### *Count III – Intentional emotion distress, injury*

**Grace Shophar and Raphah Shophar v. Teena Wilkie and Nathan Wilkie**

173. Raphah and Grace realleged paragraphs 154 - 166 above as paragraph 172 of Count III as though fully set forth.

174. Defendant Teena and Wilkie have acted contrary to the best of interest of children by depriving Raphah and Grace the emotional and biological bonds with their siblings for over 7 years.

175. Defendants have separated the Raphah and Grace from their siblings by denying visits or contact without a cause of action which violates child welfare and sibling visitation rights.

176. Defendant Teena and Nathan hid the minors from the Jorel and their siblings to create improper jurisdiction over the minors in Kansas for the purpose to prevent Grace and Raphah from retrieving their siblings based on an Illinois custody decree that was issued on June 1, 2023.

177. Defendant Wilke's intentionally detained minors from the Shophars.

178. Defendant Teena and Wilkie maliciously sought to create false claims to be sent to Illinois to mischaracterize Grace and Raphah in Illinois.

179. Teena and Nathan Wilkie knew the whereabouts of Grace and Raphah but chose not to make contact to attempt to establish a sibling connection but where intentional to interfere with harming the sibling's bond through alienation.

180. As a direct and proximate result of Defendant Teena and Willkie unjustifiable conduct to create improper jurisdiction thorough and by false no contact orders being sent to Illinois, Grace and Raphah have suffered tremendously, emotional including injury to their bright future, reputation, and sibling emotional bond and the UCCJEA case in the State of Illinois.

WHEREFORE, Grace and Raphah Shophar seek an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

## Count III – Intentional emotion distress, injury

**Grace Shophar, Raphah Shophar v. Derk Hanna and Regina Hanna**

181. In April of 2022, evidence showed that the children were left in the State of Missouri with non-relative respondents without the consent and knowledge of the Jorel.

34

182.  Records show minor children were not placed into the Missouri Department of Social Services. School records show the minor siblings were attending Missouri's schools.

183.  Video evidence shows minor children were under the control of Respondents Regina and Derk Hanna in Missouri.[1]

184.  Record document shows the minors were transferred to the control of Annie and Justin Danner's home in Missouri by Regina and Derk Hanna without the consent and knowledge of the Plaintiff Jorel.

185.  Defendant Derk and Regina acted contrary to the best of interest of children by depriving Raphah and Grace of the emotional and biological bonds with their siblings.

186.  Defendants intentionally separated Raphah and Grace from their siblings and did not attempt to establish sibling connections without a cause of action which violates child welfare and sibling visitation rights.

187.  Records show Defendants Regina and Derk, Annie and Justin conducted unjustifiable conduct to attempt to create improper jurisdiction when Shophars discovered through investigation that the minors were under their control in Missouri.

188.  To avoid Plaintiff's Missouri filing, Defendants collaborated to cross state lines to subject minors to another state, to cause hardship and prevent Grace and Raphah from reuniting with their siblings with the goal to alienate the siblings altogether.

---

[1] https://vimeo.com/828874178

189. Defendants Regina, Derk, Annie, and Justin refrained from providing the whereabouts of the minor children from their siblings and the father without authority to do so.

190. Respondents Derk, Regina, Annie, Justin collaborated with the Kansas parties to deprive familial connections with the members of the Shophar family without any legal authority due to Plaintiff Shophar's UCCJEA Missouri and Illinois Cases filed.

191. Missouri Residents Derk, Regina, hid the whereabouts of the minor siblings from Grace and Raphah for long extend time to deprive siblings' familial connection without legal authority.

192. Defendants Derk, Regina, Annie, Justin collaborated with parties in Kansas, not to appear in a Missouri or Illinois Court to allude and avoid affirming that the minors were under their control in Missouri.

193. On June 1, 2023 Illinois decreed jurisdiction over the minor children and issued a Court order to return the children to the State of Illinois to the Father.

194. Defendants Regina and Derk refrained from providing the whereabouts of the minor children from their siblings and the father without authority to do so.

195. Defendants Derk, Regina, Annie, Justin, Teena, and Wilkie collaborating to hide the fact the minors had been residing in the State of Missouri for 3-year period of time, to hide from the State of Illinois Judge.

196.    Defendant Annie and Justin conducted an unjustifiable conduct to collaborated with Defendants Wilkies to illegally take the children back to Kansas without the consent or knowledge of Jorel to create an improper jurisdiction to cause hardship to the Plaintiff, based on his Illinois custody decreed on June 1, 2023.

197.    As a direct and proximate result of Defendant Derk and Regina's unjustifiable conduct to create improper intervention to negatively affect the Illinois' jurisdiction, Grace and Raphah have suffered tremendously, emotional including the emotional bond with their siblings, and the UCCJEA case in the State of Illinois.

WHEREFORE, Grace and Raphah Shophar seek an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### Count III – Intentional emotion distress, injury

### Jorel Shophar v. Derk Hanna and Regina Hanna

198.    Jorel realleged paragraphs 154 - 166 above as paragraph 196 of Count III as though fully set forth.

WHEREFORE, Jorel Shophar seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

37

**Grace Shophar, Raphah Shophar  v. Annie Danner and Justin Danner**

199.  Video evidence shows minor children were under the control of Respondents Regina and Derk Hanna in Missouri.

200.  After Defendant Regina and Derk became aware Plaintiff Jorel discovered the minor were left under their control, the minors were transferred to the control of Annie and Justin Danner in an undisclosed location without the consent or knowledge of the Plaintiff Jorel or their siblings.

201.  Defendant Annie and Justin Danner conceal the whereabouts of the minor and acted contrary to the best of interest of children by depriving Raphah and Grace the emotional and biological bonds with their siblings without cause of action.

202.  Defendants intentionally separated Raphah and Grace from their siblings and did not attempt to establish sibling connections without a cause of action which violates child welfare and sibling visitation rights.

203.  A private investigation disclosed the location of the minors with the Defendant Danners, so Raphah and Grace Shophar sent gifts to the home of Annie and Justin Danner for their siblings.

204.  Proof of delivery of gifts sent by Raphah and Grace Shophar to their siblings to the home of Annie and Justin Danner confirmed sibling minors were in Missouri and Defendant Danners deprived familial connections to the siblings without authority to do so.

38

205. On or about October 2022 Defendant Annie and Justin sold their home and the whereabout of the minors became unknown. In addition, the Defendants alluded to appear in Missouri Case filed by the Plaintiff Jorel.

206. In 2023, Defendant Annie and Justin conducted an unjustifiable conduct to collaborate with Defendants Wilkies to hide the fact the minors had been residing in the State of Missouri for extended period of time from the State of Illinois Judge.

207. Defendant Annie and Justin conducted an unjustifiable conduct to collaborated with Defendants Wilkies to illegally take the children back to Kansas without the consent or knowledge of Jorel to create an improper Kansas jurisdiction to cause hardship to the Plaintiff based on his Illinois custody decreed on June 1, 2023.

208. As a direct and proximate result of Defendant Annie and Justin's unjustifiable conduct to create Kansas' improper intervention to negatively affect the Illinois' jurisdiction, Grace and Raphah have suffered tremendously, emotional including the emotional bond with their siblings, and the UCCJEA case in the State of Illinois.

WHEREFORE, Grace and Raphah Shophar seek an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### Count III – Intentional emotion distress, injury

**Jorel Shophar v. Annie Danner and Justin Danner**

209. Jorel Shophar realleged paragraphs  - 206 above as paragraph 208 of Count III as though fully set forth.

210. As a direct and proximate result of Defendant Annie and Justin's unjustifiable conduct to create Kansas' improper intervention to negatively affect the Illinois' jurisdiction, Jorel has suffered tremendously, emotional including injury to his parental rights and the UCCJEA case in the State of Illinois.

WHEREFORE, Jorel Shophar seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

### Count V – First Amendment Retaliation Act

**Jorel Shophar v. Kathleen Sloan**

211. On June 1, 2023, the State of Illinois decreed home state for Plaintiff's minors in the best interest of the children to protect and their safety under the Plaintiff protected right to file action.

212. On June 2, 2023 Plaintiff Jorel sent his family members Raphah, Grace and Sasuah to retrieve the minor from non-related residents of Missouri.

213. Defendants refused to release the children which prompted Jorel to file a protected grievance on June 12, 2023 in Northern Illinois naming Teena

and Nathan Wilkie as Defendants. In addition, sent the complaint to Kansas parties.

214. In retaliation, June 13, 2023, Defendant Teena and Nathan Wilkie with the collaboration of Defendant Sloan brought false claims in a proceeding before Respondent Sloan to obtain malicious orders to mischaracterize Jorel and his family with the objective to send the documents to the State of Illinois to counter the Illinois Judge's order.

215. In retaliation, Respondent Sloan made no-contact orders on the entire Shophar family without due process with the ultimate goal to send to Illinois. View Exhibit C,D,E, F

216. Sloan initiated a phone conversation only with Judge Boyd and sent the orders off Court record, to defame the entire Shophar family without an opportunity to present legal argument, objections, or evidence to strategically influence the Judge and cause Illinois to sway from his order.

217. In addition, Respondent Sloan alleged minors were in Kansas, but evidence showed minors to be in Missouri for 3 years.

218. Finally, Respondent Sloan signed and submitted an invalid order claiming jurisdiction effective on June 16, 2023 to counter Illinois's jurisdiction which was actually done on June 1, 2023 before Kansas' invalid assertion. View Exhibit H.

219. *As the legislative scheme suggests, and as Congress explicitly specified, one of the chief purposes of the PKPA is to "avoid jurisdictional*

*competition and conflict between State courts." Pub. L. 96-611, 94 Stat. 3569, §*
*7(c)(5), note following 28 U. S. C. § 1738A.*

220. As a direct and proximate result of Defendant Sloan's retaliation conduct and improper assertion of jurisdiction, the Illinois Judge was misled which caused the Illinois Judge to vacate his order and dismiss Plaintiff's case that was open since 2019, Jorel has suffered tremendously, emotional, including injury to his parental rights.

WHEREFORE, Jorel seeks declaratory decree that the Illinois has the proper jurisdiction over the minors which was asserted on June 1, 2023 and Kansas' jurisdiction was asserted improperly and after the State of Illinois.

### Jorel Shophar v. Teena Wilkie and Nathan Wilkie

221. Jorel Shophar realleged paragraphs 210 through 215 above as paragraph 220 of Count V as though fully set forth.

222. As a direct and proximate result of Defendant Teena and Wilke's retaliation conduct, using the authority of a judicial official to send false orders to the State of Illinois to cause the Illinois Judge to vacate his order and dismiss Plaintiff's case that was open since 2019, Jorel has suffered tremendously, emotional, including injury to his parental rights.

WHEREFORE, Jorel Shophar seeks an award of compensatory and punitive damages, as well as such further or other relief deemed just and equitable.

42

## Conclusion

The Defendant's conduct is detrimental to the safety of the minors to claim jurisdiction in order endanger the Plaintiff's minors, with a goal to return them with the Gorski, without the accountability from other Courts review. Gorski's requested a compassionate release but was denied and a Federal judge has made the reality clear stating, "*her criminal history score at sentencing was 18, placing her in the highest criminal history category, category VI.*", "*while the court greatly regrets the children's current difficulty, the fact remains that Ms. G was the mother of the children while she participated in this drug trafficking event and the shooting it followed,*"(**Exhibit H**) Gorski has dangerous tendencies determinantal to the best interest of the children not Grace, Raphah, Sasuah and Shophar who loves them dearly, whose greatest desire is to be reunited with them to create a legacy of good in society and heal from tumultuous years of pain.

Respectfully submitted,

GRACE SHOPHAR
RAPHAH SHOPHAR
SASUAH SHOPHAR
JOREL SHOPHAR

By: _____

By: _____

By: _____

By: _____

43

Grace Shophar
Raphah Shophar
Sasuah Shophar
Jorel Shophar
1900 E. Golf Road Suite 950
Schaumburg, IL 60173
Grace@UnitedStatesChurch.us
Raphah@UnitedStatesChurch.us
Sasuah@UnitedStatesChurch.us
Shophar@UnitedStatesChurch.us
Phone: (202) 322-4810

**EXHIBIT A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC RELATIONS DIVISION

IN RE THE ALLOCATION )
OF PARENTAL RESPONSIBILITIES OF: )
                                                )
JOREL SHOPHAR, )
                                                )
            Petitioner )
     and )                    Case No. 2019D079387
                                                )
KRISSY GORSKI, )
                                                )    Cal. C
            Respondent )

**ENTERED**
Judge William Stewart Boyd-1760
**JUN 01 2023**
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## <u>ORDER</u>

    This cause coming to be heard on Petitioner, JOREL SHOPHAR's, Emergency Motion for Return of the Minor Child. Petitioner appearing through counsel, Robert D. Perrone of Johnson O'Keefe, LLC, and submitting this Emergency Motion pursuant to Administrative Order 2020 D 3, and the Respondent, KRISSY GORSKI, having not filing an objection to same by 2:00 p.m. The Court being fully advised, it is hereby found that:

1. Petitioner is the biological Father and Mother is the biological Mother of the two children at issue; namely, J██████ S██████ ("J.S." DOB: ████████████████) and Br████ S██████ ("B.S" DOB: ████████████████).
2. The minor children have yet to have a home state with continuing jurisdiction declared.
3. In 2015, Father filed a Declaration of Paternity in Kansas – Case number 15CV5047. *This Order, Judgment, and Decree of Declaration of Paternity* was merely to declare Petitioner as the Father of the two minor children at issue.
4. Father was declared the Father of the minor children through 15CV5047.
5. There was never an allocation of parental responsibilities order, nor a child support order. The Kansas court closed 15CV5047 on December 12, 2016.
6. Father has resided in Illinois since 2017.
7. Mother resided in Illinois from 2018-2019, and is now residing at the Waseca Federal Prison in Minnesota.
8. In 2018, the state of Kansas filed a Child in Need of Care Proceeding in Kansas as related to J.S. and B.S – Case numbers 18JC00230 and 19JC00229, respectively.
9. In April of 2019, Father filed an Allocation for Parental Responsibilities in the state of Illinois.
10. In April of 2022, Father filed an Order of Child Custody in the state of Missouri – Case number 2216-FC02896-01.
11. The minor children were believed to be in the state of Missouri at the time of Father's 2022 filing.

12. Since the filing of Father's Petition in 2019, Mother has traveled through various states.

13. Father has followed Mother through all states, and Father has attempted to bring the children back to Illinois for their own protection.

14. At issue is the minor children's home state.

15. On February 4, 2022, the state of Kansas issued an Order to *Release Jurisdiction and Release DCF Custody* of the minor children.

16. On November 22, 2022, the state of Missouri issued an Order *Declining Jurisdiction and Order of Dismissal* of the minor children.

17. 750 ILCS 36/201 of the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA") states

    a.   that Illinois has jurisdiction over an initial custody determination only if:

        i.   This State is the home state of the child on the date of the commencement, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or a person acting as a parent continues to live in this State

        ii.   A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 207 or 208, and:

1. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

2. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

        iii.   All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under Section 207 or 208; or

        iv.   no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

    b.   Subsection (a) is the exclusive jurisdiction basis for making a child-custody determination by a court of this State.

    c.   Physical presence of, or

    d.   personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

18. Mother is in prison for drug trafficking.

19. The minor children are believed to be residing in Missouri with acquaintances of Mother.

20. The acquaintances of Mother are believed to be involved in drug trafficking, which places the minor children in immediate danger.

21. Kansas has explicitly denied jurisdiction of the minor children. See *Exhibit A*.

22. Missouri has explicitly denied jurisdiction of the minor children. See *Exhibit B*.

23. Due to jurisdiction being denied by Kansas and by Missouri in accordance with 750 ILCS 36/201 (a)(ii), neither Kansas nor Missouri have jurisdiction over the

minor children J.S and B.S.

24. On this basis, this Court finds that Illinois is the home state for the minor children.

25. This matter is deemed to be an emergency as the minor children are in immediate danger while in the care of Mother's acquaintances.

## THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Illinois is the home state for the minor children.

2. The minor children are to be returned to Illinois to the care of Petitioner, JOREL SHOPHAR.

3. This matter shall continue on Father's Petition for Allocation of Responsibilities, filed on April 2, 2019.

4. Petitioner shall engage any law enforcement to effectuate the return of the minor children J.S. and B.S.

5. This matter is continued to July 5, 2023, at 9:15 AM for further Status. Parties to appear via Zoom.

**Robert D. Perrone**
**Johnson O'Keefe, LLC (#100789)**
**Counsel for Petitioner**
**303 E. Wacker, Suite 1150**
**Chicago, IL 60601**
**(312) 319-4444**
**Robert.perrone@johnsonokeefe.com**

Respondent: strongernow815@gmail.com

Entered:

Honorable William S. Boyd

I hereby certify that the document to which this certification is affixed is a true copy.

Date June 2, 2023

IRIS MARTINEZ
Clerk of the Circuit Court
of Cook County, IL

Exhibit A

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J█████ S█        Case No.18JC00230
Date of Birth ████████

B█████ S████████    Case No.18JC00229
Date of Birth ████████

Division 10



## <u>MOTION AND ORDER TO RELEASE JURISDICTION AND RELEASE DCF CUSTODY</u>

COMES NOW, **ERICA A MILLER**, an Assistant District Attorney for Johnson County, Kansas, and respectfully moves the Court for an Order releasing the jurisdiction of the Court and releasing DCF custody in the above-entitled matter for the following reason(s):

Court involvement is no longer necessary.

WHEREFORE, the State respectfully requests this Court to issue an Order releasing the jurisdiction of the Court, and releasing DCF custody for the aforementioned reason(s).

NOW, on this 25th day of January, 2022, this matter comes before the Honorable KATHLEEN L SLOAN, Judge of the District Court, Juvenile Section, on the Motion of ERICA A MILLER, Assistant District Attorney, for an Order releasing the jurisdiction of the Court and releasing DCF custody.

The Court, after reviewing the file and the recommendations of the District Attorney's Office, orders that the above named child is released from DCF custody. Further, this matter shall be released from the jurisdiction of the Court upon payment of all court costs and fees.

/s/ KATHLEEN SLOAN
Dated: 02/04/22

JUDGE OF THE DISTRICT COURT
Division 10

Approved by:

*Clerk of the District Court, Johnson County Kansas*
*02/04/22  02:41pm TK*

**Exhibit B**

FILED
DIVISION 43
22-Nov-2022 12:21
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _Juanita Kaelyn_



# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | | |
|---|---|---|
| **JOREL SHOPHAR,** | ) | |
| Petitioner, | ) | **Case No. 2216-FC02896-01** |
| | ) | |
| v. | ) | **Division 43** |
| | ) | |
| **KRISSY GROSKI,** | ) | |
| Respondent. | ) | |

### FINDINGS AND RECOMMENDATIONS
### JUDGMENT AND ORDER DECLINING JURISDICTION AND
### ORDER OF DISMISSAL

**ON** the 10th day of November, 2022, this Court held a Joint UCCJEA Conference with the Honorable Kathleen L. Sloan, District Court Judge, Division 10 of the District Court of Johnson County, Kansas via Zoom. Present for the Joint UCCJEA Conference, in addition to this Court and Judge Sloan, were the following individuals: Erica Miller, attorney for the State of Kansas; Rich Klein, Guardian ad Litem in the Kansas matter; K. Martin Kuny, Guardian ad Litem in the Missouri matter; Jorel Shophar, father of the minor children; Troy Leavitt, attorney for Jorel Shophar in the Missouri matter; and Jackie Moore, counsel for mother, Krissy Groski, in the Kansas Matter.

**NOW** on this 22nd day of November, 2022, the Court enters the following Findings and Orders:

**THE COURT FINDS** that Petitioner, Jorel Shophar is a resident of the State of Illinois, currently residing at 1015 Hobble Bush Lane, Elgin, Illinois 60120.

**THE COURT FURTHER FINDS** that Respondent, Krissy Groski is currently incarcerated at the Waseca Federal Prison, located at 1000 University Drive, SW, Waseca, Minnesota 56093.

1

**THE COURT FURTHER FINDS** that Petitioner, Jorel Shophar and Respondent, Krissy Groski share two minor children, namely: J████ R████ S██████, born ████████████, now age 10; and B████ N████ S██████, born ███████████, now age 9.

**THE COURT FURTHER FINDS** that the State of Kanas entered an Order, Judgment, and Decree of Declaration of Paternity on March 4, 2016 in Case Number: 15 CV 5047.

**THE COURT FURTHER FINDS** that Petitioner, Jorel Shophar, *pro se,* filed a *Petition for Emergency Temporary Jurisdiction for Custody Under the UCCJEA and UCCJEA Motion to Transfer Jurisdiction for Custody of Minor Children to the State of Illinois* on April 13, 2022. The Jackson County Department of Civil Records treated this filing as a *Petition for Foreign Judgment.*

**THE COURT FINDS** that between April 13, 2022 and May 9, 2022, Petitioner, Jorel Shophar, his counsel, Troy Leavitt, and the Jackson County Department of Civil Records corresponded to obtain documents necessary for the registration of a foreign judgment.

**THE COURT FINDS** that on May 9, 2022, Petitioner, Jorel Shophar filed an *Order of Child Custody* dated January 25, 2022. Said *Order* was entered by Judge Sloan in Division 10 of the District Court of Johnson County Kansas. This *Order* was the subject of the Missouri registration.

**THE COURT FURTHER FINDS** that Respondent, Krissy Groski was served with the *Notice of Filing of Foreign Judgment* on or about May 18, 2022. She did not file an objection.

**THE COURT FURTHER FINDS** that Petitioner, Jorel Shophar filed a *Motion to Modify*[1] on June 8, 2022.

---

[1] Petitioner, Jorel Shophar's Motion to Modify, filed on June 8, 2022, failed to mention the pending CINC cases in Johnson County Kansas pursuant to the requirements of the UCCJEA.

**THE COURT FURTHER FINDS** that Respondent, Krissy Groski was served with the *Motion to Modify* on July 8, 2022.

**THE COURT FURTHER FINDS** that this Court held a Case Management Conference on October 6, 2022 wherein this Court expressed concern as to jurisdiction in this matter. Petitioner, Jorel Shophar advised the Court that the children were residing in the State of Missouri with non-relatives and had been for more than six (6) months. To address and investigate the issue of jurisdiction, this Court appointed a Guardian ad Litem[2] and entered an *Order Joining Necessary Third-Parties*[3], namely the non-relative individuals alleged to have actual physical custody of the minor children in Missouri.

**THE COURT FURTHER FINDS** that on October 7, 2022 this Court was contacted by Judge Kathleen L. Sloan of the District Court of Johnson County, Kansas, advising that she had open Child in Need of Care (CINC) cases involving the minor children which had been on file since April 2022.

**THE COURT FURTHER FINDS** that due to cases pending in both Missouri and Kansas this Court and Division 10 of the District Court of Johnson County coordinated a Joint UCCJEA Conference to be held on November 10, 2022 at 1:00 p.m. via Zoom.

**THE COURT FURTHER FINDS** that the State of Missouri has enacted the *Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA)* in *Sections 452.740-452.845 R.S.Mo.* and that the State of Kansas has enacted the *Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA)* in *KSA* 23-37, 101-405.

---

[2] Jared Frick was appointed as Guardian ad Litem on October 6, 2022, but advised the Court that he had a conflict. Jared Frick was thereafter discharged and K. Martin Kuny was appointed Guardian ad Litem on October 6, 2022.
[3] An *Order Nunc Pro Tunc Joining Necessary Parties* was entered on October 20, 2022 to correct the names of the necessary parties.

**THE COURT FURTHER FINDS** that the State of Kansas assumed emergency jurisdiction over the minor children on April 1, 2022 in Case Numbers: 22 JC 181 and 22 JC 182, which are Child in Need of Care cases.

**THE COURT FURTHER FINDS** that the State of Kansas emergency jurisdiction was assumed prior to Petitioner, Jorel Shophar's attempts to register the Kansas *Order* in the State of Missouri.

**THE COURT FURTHER FINDS** that in addition to the Order, Judgment, and Decree of Declaration of Paternity entered on March 4, 2016, the District Court of Johnson County, Kansas has entered subsequent judgments and orders regarding custody of the minor children in Case Number 15 CV 5047, the last *Order* was entered on January 25, 2022 and was registered in the State of Missouri.

**THE COURT FURTHER FINDS** that the District Court of Johnson County, Kansas has had numerous CINC cases involving the minor children, to wit: 15 JC 581; 15 JC 582; 18 JC 229; and 18 JC 230.

**THE COURT FURTHER FINDS** that jurisdiction under the CINC cases 18 JC 229 and 18 JC 230 was terminated on February 4, 2022, subsequent to the District Court of Johnson County, Kansas entering custody orders in the January 25, 2022 order, pursuant to KSA 38-2264(k)[4].

**THE COURT FURTHER FINDS** that Petitioner Jorel Shophar argues that since the minor children were placed with Respondent, Krissy Groski, and/or non-relative placements in

---

[4] The Court notes that KSA 38-2264(k) is similar to *Section* 211.093 R.S.Mo., which provides a juvenile or dependency court may enter custody orders, including parenting plans, prior to termination of the juvenile or dependency matter in order to effectuate permanency for children.

the State of Missouri during periods of time from June 2020 through March 2022, that Missouri is the minor children's home state.

**THE COURT FURTHER FINDS** that Petitioner Jorel Shophar's argument that Missouri became the minor children's home state during the pendency of the CINC case fails as the children were under continuing jurisdiction of Kansas in the CINC cases 18 JC 229 and 18 JC 230 and the children's placement in Missouri was pursuant to orders entered in the Kansas CINC cases to effectuate permanency of the minor children. Further, the State of Kansas retained jurisdiction under the parentage case, 15 CV 5047.

**THE COURT FURTHER FINDS** that the Kansas Court did not terminate its jurisdiction under the CINC cases until February 4, 2022, after entering custody orders in the parentage case. The period of time between February 4, 2022 and April 1, 2022, when Kansas assumed emergency jurisdiction under the CINC case numbers 22 JC 181 and 22 JC 182, was less than two months.

**THE COURT FURTHER FINDS** that the State of Kansas alleges that the minor children and Respondent, Krissy Groski, were residing in the State of Kansas, at an undisclosed location, from August 2021 until Respondent, Krissy Groski was taken into federal custody in early March 2022.

**THE COURT FURTHER FINDS** that the State of Kansas alleges that the minor children were only in the State of Missouri with non-relative placements from early March 2022 until April1, 2022 when the State of Kansas assumed emergency jurisdiction under CINC cases 22 JC 181 and 22 JC 182.

**THE COURT FURTHER FINDS** that based upon all information provided to this Court, the State of Kansas has exclusive, continuing jurisdiction under the UCCJEA.

5

**THE COURT FURTHER FINDS** that based upon all information provided to this Court, the State of Missouri lacks jurisdiction under the UCCJEA.

**THE COURT FURTHER FINDS** that Petitioner, Jorel Shophar alleges that the State of Illinois has an interest in jurisdiction of the minor children, as Petitioner Jorel Shophar is a resident of the State of Illinois and the State of Illinois was investigating an ICPC placement of the children in the State of Illinois under the 18 JC 229 and 18 JC 230 CINC cases. Petitioner, Jorel Shophar alleges that this Missouri Court needs to speak with the judicial officer presiding over the matter in Illinois prior to making a determination as to whether Illinois should have jurisdiction.

**THE COURT FURTHER FINDS** that this Missouri Court has no claim to jurisdiction over the children subject to this action and therefore need not weigh in on any UCCJEA issues between other states.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that this Court declines to exercise jurisdiction over the minor children J██████R██████ S██████, born D██████████, now age 10; and B█████ N████ S██████, born █████████████now age 9, as the State of Kansas has exclusive, continuing jurisdiction over the minor children and has additionally assumed emergency jurisdiction over the minor children.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Petitioner's *Motion to Modify,* filed herein on June 8, 2022, is hereby **DISMISSED** for lack of jurisdiction, at Petitioner's costs.

**IT IS SO ORDERED.**

22-Nov-2022
_____
**DATE**

_____
**COMMISSIONER LISA M. DUBÉ**

6

The parties are notified that the foregoing Findings and Recommendations have been entered this date by the Commissioner, and all papers relative to the proceedings or case together with the Findings and Recommendations have been transferred to a Judge of the Court. The Findings and Recommendations shall become the judgment of the Court upon adoption by order of the Judge. The parties are further notified that a motion for re-hearing may be filed within fifteen days after the mailing of the notice of the filing of the judgment of the Court. If the motion for re-hearing is not ruled on within forty-five days after the motion is filed, the motion is over-ruled for all purposes.

## JUDGMENT AND ORDER ADOPTING COMMISSIONER'S FINDINGS AND RECOMMENDATIONS

It is hereby ordered that the Findings and Recommendations entered herein are adopted as a judgment of the Court.

22-Nov-2022
_____
**DATE**                                    **JUDGE**

## NOTICE OF FILING OF JUDGMENT

I certify that the Notice of Filing of Judgment, along with the Commissioner's Findings and Recommendations, including the notice of rehearing and statement of transfer to a Judge were served via U.S. Mail, postage prepaid and/or emailed to the parties on ___22-Nov-2022___.

Troy Leavitt
**Attorney for Petitioner**

Krissy Groski
Inmate #30095-031
Waseca Federal Prison FCI
1000 University Dr SW
Waseca, MN 56093
**Respondent, Pro Se**

K. Martin Kuny
**Guardian ad Litem**

7

Justin Danner
Annie Danner
11816 N. Belmont Ave.
Kansas City, Missouri 64156
**Third-Party Respondents**

Derk Hanna
Regina Hanna
15350 N. Winan Road
Platte City, Missouri 64079
**Third-Party Respondents**

Juanita Koeger

Judicial Administrative Assistant / Clerk, Division 43

8

**EXHIBIT B**

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### Child In Need of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J~~~~~~ SH~~~~R
Date of Birth ~~~~~~~1

B~~~~~ SH~~~~R
Date of Birth 0~~~~~~0

Case No.18JC00230

Case No.18JC00229

Division 10

### MOTION AND ORDER TO RELEASE JURISDICTION AND RELEASE DCF CUSTODY

COMES NOW, **ERICA A MILLER** , an Assistant District Attorney for Johnson County, Kansas, and respectfully moves the Court for an Order releasing the jurisdiction of the Court and releasing DCF custody in the above-entitled matter for the following reason(s) :

Court involvement is no longer necessary.

WHEREFORE, the State respectfully requests this Court to issue an Order releasing the jurisdiction of the Court, and releasing DCF custody for the aforementioned reason(s).

NOW, on this 25th day of January, 2022, this matter comes before the Honorable KATHLEEN L SLOAN, Judge of the District Court, Juvenile Section, on the Motion of ERICA A MILLER, Assistant District Attorney, for an Order releasing the jurisdiction of the Court and releasing DCF custody.

The Court, after reviewing the file and the recommendations of the District Attorney's Office, orders that the above named child is released from DCF custody. Further, this matter shall be released from the jurisdiction of the Court upon payment of all court costs and fees.

/s/ KATHLEEN SLOAN
Dated: 02/04/22

JUDGE OF THE DISTRICT COURT
Division 10

Approved by:

*Clerk of the District Court, Johnson County Kansas*
*02/04/22 02:41pm TK*

**EXHIBIT C**

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need Of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J███████ S████████
Date of Birth ████████████

B██████ S████████
Date of Birth ███████████

Case No.22JC00182

Case No.22JC00181

Division 10

## NO CONTACT ORDER PURSUANT TO K.S.A 38-2255

The Court herby finds the above listed minor child(ren) is subject to an order of disposition pursuant to K.S.A. 38-2255, and that Grace Shophar is an alleged perpetrator of physical, sexual, mental, or emotional abuse of the listed child(ren).

1.      That Grace Shophar is related to the child(ren) as sister and therefore this court has jurisdiction over Grace Shophar to issue such orders as necessary to ensure the well-being, best interests and safety of the child(ren) and/or any caregiver for the child(dren);

2.      The court has subject matter over the above listed child(ren);

3.      That continued contact with Grace Shophar is detrimental to the best interest of the child(ren);

4.      That  Grace Shophar is hereby restrained from residing with the above listed child(ren); visiting, contacting, harassing, or intimidating the child(ren), other family members or witnesses. Specifically, Grace Shophar is restrained from contacting J███S██████, B███ S██████, Teena Wilkie and Nathan Wilkie;

5.      That such restraining order shall be served by personal service pursuant to K.S.A. 38-2237(a) on Grace Shophar;

6.      That the terms of this Order shall be enforceable by any law enforcement officer to whom a copy of this Order is exhibited and either party shall have the assistance of any such law enforcement officer upon request without further Order of the Court. The parties are each advised that violation of

this Order may constitute violation of a protective order under K.S.A. 21-5924(a)(3), as amended.

IT IS SO ORDERED.

/s/ KATHLEEN SLOAN
Dated: 06/13/23

JUDGE OF THE DISTRICT COURT
JUVENILE DIVISION

SUBMITTED BY:
/s/ DONALD W HYMER
Dated: 06/13/23

**DONALD W HYMER, #14650/rae**
Assistant District Attorney
150 West Santa Fe Street
Olathe, Kansas    66061
**9137153047  FAX (913) 715-3040**
**DON.HYMER@JOCOGOV.ORG**

## WARNINGS TO ALLEGED PERPETRATOR OF ABUSE:

- **This order is effective when signed by the judge.  Law enforcement officials shall immediately enforce this order.**
- **Violation of this order may constitute: violation of a protective order as provided in K.S.A. 21-5924, and amendments thereto and may result in prosecution and conviction under Kansas criminal statutes.**
- **Violation of this order may also be punishable as contempt of this court.**

**EXHIBIT D**

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need Of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J██████ S████████                    Case No.22JC00182
Date of Birth ████████

B██████ S████████                    Case No.22JC00181
Date of Birth ████████

                                     Division 10

## <u>NO CONTACT ORDER PURSUANT TO K.S.A 38-2255</u>

The Court herby finds the above listed minor child(ren) is subject to an order of disposition

pursuant to K.S.A. 38-2255, and that Raphah Shophar is an alleged perpetrator of physical, sexual,

mental, or emotional abuse of the listed child(ren).

1.      That Raphah Shophar is related to the child(ren) as brother and therefore this court has

jurisdiction over Raphah Shophar to issue such orders as necessary to ensure the well-being, best

interests and safety of the child(ren) and/or any caregiver for the child(dren);

2.      The court has subject matter over the above listed child(ren);

3.      That continued contact with Raphah Shophar is detrimental to the best interest of the

child(ren);

4.      That Raphah Shophar is hereby restrained from residing with the above listed child(ren);

visiting, contacting, harassing, or intimidating the child(ren), other family members or witnesses.

Specifically, Raphah Shophar is restrained from contacting J███ S██████, B███ S██████, Teena

Wilkie and Nathan Wilkie;

5.      That such restraining order shall be served by personal service pursuant to K.S.A. 38-2237(a)

on Raphah Shophar;

6.      That the terms of this Order shall be enforceable by any law enforcement officer to whom a

copy of this Order is exhibited and either party shall have the assistance of any such law enforcement

officer upon request without further Order of the Court. The parties are each advised that violation of

*Clerk of the District Court, Johnson County Kansas*
*06/13/23  04:34pm INH*

this Order may constitute violation of a protective order under K.S.A. 21-5924(a)(3), as amended.


IT IS SO ORDERED.

/s/ KATHLEEN SLOAN
Dated: 06/13/23
_____
JUDGE OF THE DISTRICT COURT
JUVENILE DIVISION

SUBMITTED BY:
/s/ DONALD W HYMER
Dated: 06/13/23
_____
**DONALD W HYMER, #14650/rae**
Assistant District Attorney
150 West Santa Fe Street
Olathe, Kansas    66061
**9137153047  FAX (913) 715-3040**
DON.HYMER@JOCOGOV.ORG

## WARNINGS TO ALLEGED PERPETRATOR OF ABUSE:

- **This order is effective when signed by the judge. Law enforcement officials shall immediately enforce this order.**
- **Violation of this order may constitute: violation of a protective order as provided in K.S.A. 21-5924, and amendments thereto and may result in prosecution and conviction under Kansas criminal statutes.**
- **Violation of this order may also be punishable as contempt of this court.**

**EXHIBIT E**

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need Of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J█████ S█████
Date of Birth 12/13/11

B████ S███████
Date of Birth 02/04/13

Case No.22JC00182

Case No.22JC00181

Division 10

## NO CONTACT ORDER PURSUANT TO K.S.A 38-2255

The Court herby finds the above listed minor child(ren) is subject to an order of disposition pursuant to K.S.A. 38-2255, and that Sasuah Shophar is an alleged perpetrator of physical, sexual, mental, or emotional abuse of the listed child(ren).

1.      That Sasuah Shophar is related to the child(ren) as stepmother and therefore this court has jurisdiction over Sasuah Shophar to issue such orders as necessary to ensure the well-being, best interests and safety of the child(ren) and/or any caregiver for the child(dren);

2.      The court has subject matter over the above listed child(ren);

3.      That continued contact with Sasuah Shophar is detrimental to the best interest of the child(ren);

4.      That Sasuah Shophar is hereby restrained from residing with the above listed child(ren); visiting, contacting, harassing, or intimidating the child(ren), other family members or witnesses. Specifically, Sasuah Shophar is restrained from contacting J████ S█████ B████ S███████, Teena Wilkie and Nathan Wilkie;

5.      That such restraining order shall be served by personal service pursuant to K.S.A. 38-2237(a) on Sasuah Shophar;

6.      That the terms of this Order shall be enforceable by any law enforcement officer to whom a copy of this Order is exhibited and either party shall have the assistance of any such law enforcement officer upon request without further Order of the Court. The parties are each advised that violation of

this Order may constitute violation of a protective order under K.S.A. 21-5924(a)(3), as amended.

IT IS SO ORDERED.

/s/ KATHLEEN SLOAN
Dated: 06/13/23

JUDGE OF THE DISTRICT COURT
JUVENILE DIVISION

SUBMITTED BY:
/s/ DONALD W HYMER
Dated: 06/13/23

DONALD W HYMER, #14650/rae
Assistant District Attorney
150 West Santa Fe Street
Olathe, Kansas     66061
9137153047   FAX (913) 715-3040
DON.HYMER@JOCOGOV.ORG

## WARNINGS TO ALLEGED PERPETRATOR OF ABUSE:

- **This order is effective when signed by the judge. Law enforcement officials shall immediately enforce this order.**
- **Violation of this order may constitute: violation of a protective order as provided in K.S.A. 21-5924, and amendments thereto and may result in prosecution and conviction under Kansas criminal statutes.**
- **Violation of this order may also be punishable as contempt of this court.**

**EXHIBIT F**

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need Of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J██████, S███████                                    Case No.22JC00182
Date of Birth ████████

                                                     Case No.22JC00181
B██████ S███████
Date of Birth ████████                               Division 10

## NO CONTACT ORDER PURSUANT TO K.S.A 38-2255

The Court herby finds the above listed minor child(ren) is subject to an order of disposition

pursuant to K.S.A. 38-2255, and that Jorel Shophar is an alleged perpetrator of physical, sexual,

mental, or emotional abuse of the listed child(ren).

1.      That Jorel Shophar is related to the child(ren) as father and therefore this court has

jurisdiction over Jorel Shophar to issue such orders as necessary to ensure the well-being, best

interests and safety of the child(ren) and/or any caregiver for the child(dren);

2.      The court has subject matter over the above listed child(ren);

3.      That continued contact with Jorel Shophar is detrimental to the best interest of the child(ren);

4.      That  Jorel Shophar is hereby restrained from residing with the above listed child(ren);

visiting, contacting, harassing, or intimidating the child(ren), other family members or witnesses.

Specifically, Jorel Shophar is restrained from contacting J███S███████, B█████ S██████, Teena

Wilkie and Nathan Wilkie;

5.      That such restraining order shall be served by personal service pursuant to K.S.A. 38-2237(a)

on Jorel Shophar;

6.      That the terms of this Order shall be enforceable by any law enforcement officer to whom a

copy of this Order is exhibited and either party shall have the assistance of any such law enforcement

officer upon request without further Order of the Court. The parties are each advised that violation of

this Order may constitute violation of a protective order under K.S.A. 21-5924(a)(3), as amended.

*Clerk of the District Court, Johnson County Kansas*
*06/13/23  04:34pm INH*

IT IS SO ORDERED.

/s/ KATHLEEN SLOAN
Dated: 06/13/23

_____
JUDGE OF THE DISTRICT COURT
JUVENILE DIVISION

SUBMITTED BY:
/s/ DONALD W HYMER
Dated: 06/13/23

_____
**DONALD W HYMER, #14650/rae**
Assistant District Attorney
150 West Santa Fe Street
Olathe, Kansas    66061
**9137153047   FAX (913) 715-3040**
**DON.HYMER@JOCOGOV.ORG**

## WARNINGS TO ALLEGED PERPETRATOR OF ABUSE:

- **This order is effective when signed by the judge. Law enforcement officials shall immediately enforce this order.**
- **Violation of this order may constitute: violation of a protective order as provided in K.S.A. 21-5924, and amendments thereto and may result in prosecution and conviction under Kansas criminal statutes.**
- **Violation of this order may also be punishable as contempt of this court.**

*Clerk of the District Court, Johnson County Kansas*
*06/13/23  04:34pm INH*

**EXHIBIT G**

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Child In Need Of Care Proceedings Under Chapter 38 of K.S.A.

In the Interest of

J██████ L. S██████
Date of Birth ██████████

B██████ S██████
Date of Birth ██████████

Case No.22JC00182

Case No.22JC00181

Division 10

## JOURNAL ENTRY
(Kansas has Jurisdiction under UCCJEA)

NOW ON this 10th day of November, 2022, a joint conference was held to discuss jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) before the Honorable KATHLEEN L SLOAN, Judge of the District Court, and LISA DUBÈ, Commissioner of the Circuit Court of Jackson County, Missouri.

Appearances via Zoom are as follows: The State of Kansas appears by Erica Miller, Assistant District Attorney; the children appears naught, but by Court-appointed *Guardian Ad Litem* in the above-captioned cases, Richard P. Klein, and *Guardian ad Litem* in Missouri case number 2216-FC02896-01, K. Martin Kuny; the mother, Krissy Gorski, appears naught, but by Court-appointed counsel, Jaclynn J.B. Moore; the father, Jorel Shophar, appears in person and with counsel in the Missouri matter, Troy Leavitt.

The Courts, upon review of the file and being duly advised, agree that the State of Kansas has exclusive, continuing jurisdiction over the minor children.

Therefore, Judge Kathleen L. Sloan and Commissioner Lisa Dubé find and conclude that Kansas has continued jurisdiction under the UCCJEA.

IT IS SO ORDERED.

/s/ KATHLEEN SLOAN
Dated: 06/16/23
JUDGE OF THE DISTRICT COURT

RESPECTFULLY SUBMITTED:
/s/ DONALD W HYMER
Dated: 06/16/23
DONALD W HYMER, #14650/rae
Assistant District Attorney
150 West Santa Fe Street
Olathe, Kansas 66061
(913) 715-3047 FAX (913) 715-3040
DON.HYMER@JOCOGOV.ORG

*Clerk of the District Court, Johnson County Kansas*
*06/16/23 01:42pm INH*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

In the Interest of                          Case No.: 22JC00182

J██████ S███████
                        CERTIFICATE OF MAILING

        I hereby certify that on JUNE 16, 2023, I mailed a copy of the
foregoing JOURNAL ENTRY (KANSAS HAS JURISDICTION UNDER UCCJEA) to
each of the parties named at the address listed below:

        X       By placing in an envelope properly addressed and
                delivered it to the United States Postal Office for
                delivery with postage prepaid.

        _       By registered or certified mail of the United States
                Postal Service endorse "return receipt requested showing
                to whom and date delivered" and "restricted delivery" or
                "certified delivery" with all appropriate fees paid.

Parent(s)/Respondent(s):
C/O KRISSY GORSKI, DOC BOP #30095-031, FCI WASECA, 1000 UNIVERSITY
DR, SW, WASECA, MN 56093

C/O JOREL SHOPHAR, 1015 HOBBLE BUSH LANE, ELGIN, IL 60120

C/O GARY GORSKI, 27375 BRUSH STREET, MADISON HEIGHTS, MI 48071

C/O YORK ALEXANDER LA FLEUR, 17192 ANNCHESTER, DETROIT, MI 48219

Electronically Served:
Attorney(s):
RICHARD P KLEIN;TIMOTHY MING CHESTER OLSON

                                        CLERK OF THE DISTRICT COURT
                                        BY ISABELLA NEW HOLY

**EXHIBIT H**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       **Plaintiff,**

v.

       Case No. 20-20018-02-DDC

**KRISSY GORSKI (02),**

       **Defendant.**

---

### MEMORANDUM AND ORDER

Defendant Krissy Gorski has filed a pro se[1] Motion for Compassionate Release (Doc. 146). Ms. Gorski asserts that her family circumstances present an extraordinary and compelling reason for her release. But Ms. Gorski fails to present an extraordinary and compelling reason for compassionate release. The court thus denies Ms. Gorski's motion. The court explains this decision, below.

### I.    Background

On September 23, 2021, Ms. Gorski entered a guilty plea to an Indictment (Doc. 113) charging one count of conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. On March 3, 2022, the court sentenced her to 60 months' in prison. Doc. 142. Her projected good time release date is June 5, 2026. *See* Krissy Gorski (Reg. No. 30095-031) (last visited Aug. 26, 2022), https://www.bop.gov/inmateloc/.

---

[1]    People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Ms. Gorski filed the current Motion for Compassionate Release on June 6, 2022. Doc. 146. The government responded on July 6, 2022. Doc. 149.

## II.    Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions. One such exception is contained in [18 U.S.C.] § 3582(c)(1)." *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (citation and internal quotation marks omitted). This exception permits district courts to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days[2] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements). Our Circuit has held that this exhaustion requirement is a claim-processing rule that the government may waive or forfeit. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

Separate from this exhaustion requirement, the court applies a three-step substantive analysis to motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] §

---

[2]     Under § 3582(c)(1)(A), a defendant may file a motion for compassionate release directly with the district court after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief." *See Maumau*, 993 F.3d at 830 (emphasis added).

3553(a), to the extent that they are applicable." *Id.* Relief may "be granted only if all three prerequisites are satisfied," and, so, "the three steps [can] be considered in any order." *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021). The Tenth Circuit has held that it does not view the first step in § 3582(c)(1)(A)—"extraordinary and compelling" reasons—as jurisdictional. *See Hald*, 15 F.4th at 942 n.7 (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect").

The court need not address the second step of the analysis because the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions, like this one. *Maumau*, 993 F.3d at 837. So, "until the Sentencing Commission issues such a policy statement, the second requirement does not apply." *United States v. Quinn*, No. 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

**III.    Analysis**

*First*, the court considers whether Ms. Gorski has exhausted her administrative remedies. The government never asserts that Ms. Gorski failed to exhaust. So, the court's analysis will move to the next step.

*Second*, the court must determine whether Ms. Gorski presents "extraordinary and compelling" reasons for compassionate release. Ms. Gorski asserts that her "children are in need of a primary caregiver" because her stepmother and sister, the persons to whom she had entrusted her children, both have passed away. Doc. 146 at 1-2. The Federal Sentencing Guidelines specifically mention that "family circumstances" may present an extraordinary and compelling reason for compassionate release. U.S. Sent'g Guidelines § 1B1.13 (U.S. Sent'g Comm'n 2018). Commentary to the Sentencing Guidelines defines family circumstances to

3

include the "death or incapacitation of the caregiver of the defendant's minor child[.]" *Id.* § 1B1.13 cmt. 1.(C).[3] While both children's caretakers have passed away, Ms. Gorski's situation does not warrant compassionate release. Even if she were released from her sentence, Ms. Gorski has not shown that she has legal custody of her children. Ms. Gorski has lost custody of her children before due to drug relapse and there is no guarantee that the state of Kansas would return her children to her immediately —or remain with her—if she is released from prison. "Unfortunately, 'the care of minor children is a problem faced by many convicted defendants.'" *United States v. Vela-Salinas*, No. 3:11-cr-00083-19, 2022 WL 391490, at \*5 (M.D. Tenn., Feb. 8, 2022) (quoting *United States v. Kibby*, No. 2:19-cr-179, 2021 WL 2009568, at \*3 (S.D. Ohio May 20, 2021)). "[S]uch a problem, without more, is an ordinary, not extraordinary, circumstance." *Id.*; *see also United States v. Reed*, No. 2:15-CR-752 TS, 2022 WL 844435, at \*2 (D. Utah Mar. 22, 2022) (acknowledging defendant's family circumstances involving struggling daughters were "undoubtedly difficult" but not extraordinary and compelling reasons because "familial hardship often results from criminal conduct"). Thus, the court concludes that even if Ms. Gorski has exhausted all her remedies with the BOP, Ms. Gorski has not met her burden to demonstrate extraordinary and compelling reasons for her release.

*Third*, if Ms. Gorski had presented extraordinary and compelling reasons for compassionate release, the court then would have to consider the sentencing factors in 18 U.S.C. § 3553(a). Those factors include: (1) defendant's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offenses; (3) the need for a sentence to

---

[3]     The Sentencing Commission's Guidelines and their commentary don't bind the court, but the court finds this definition of family circumstances useful. *See United States v. Barrio*, No. 21-6103, 2022 WL 898764, at \*4 (10th Cir. Mar. 28, 2022) (citing Sentencing Guidelines § 1B1.13 cmt. 1 and noting that these "policy statements guide, but do not confine, the court in its analysis of extraordinary and compelling circumstances warranting a sentence reduction").

provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a). Ms. Gorski's prior criminal convictions include multiple charges of drug possession and possession of drug paraphernalia, and her criminal history score at sentencing was 18, placing her in the highest criminal history category, category VI. Doc. 138 at 17–25 (PSR ¶¶ 65–84). This history shows her years-long struggle with addiction and drug abuse. Her struggle culminated in this latest charge, which involved Kansas Highway Patrol troopers engaging in a high-speed chase with her co-defendant ending when her co-defendant sustained injuries in a gun battle with those same officers. This chase and gun battle followed a trip to the Mexican border to secure methamphetamine to distribute, a trip that Ms. Gorski willingly assisted. And while the court greatly regrets the children's current difficulty, the fact remains that Ms. Gorski was the mother of the children while she participated in this drug trafficking event and the shooting it followed. She pleaded guilty to a serious charge involving dangerous activity. These facts do not favor compassionate release.

Her sentence in this case doesn't favor compassionate release, either. Ms. Gorski's criminal history score originally produced a sentencing guideline range of 151–188 months' imprisonment. *Id.* at 33 (PSR ¶ 129). Recognizing her troubled past, the court granted a variance on Ms. Gorski's sentence under 18 U.S.C. § 3553(a)(1), resulting in her current sentence of 60 months' imprisonment. Doc. 143 at 1. Ms. Gorski has served not even a quarter of that sentence. The court finds these factors weigh heavily against Ms. Gorski's motion. They, too, do not favor compassionate release.

## IV.     Conclusion

As explained above, the court denies Ms. Gorski's motion for two independent reasons: (1) she does not present extraordinary and compelling reasons for compassionate release, and (2) the § 3553(a) factors do not favor compassionate release.

**IT IS THEREFORE ORDERED BY THE COURT** that Ms. Gorski's Motion for Compassionate Release (Doc. 146) is denied.

**IT IS SO ORDERED.**

**Dated this 27th day of September, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**